436 F.2d 1363
 CONSUMERS UNION OF UNITED STATES, INC., Plaintiff-Appellant,
v.
VETERANS ADMINISTRATION, W. J. Driver, Administrator of
Veterans Affairs of the Veterans Administration, Francis E.
Blalock, Chief, Paperwork Management Division, Medical
Administrative Service, Department of Medicine and Surgery,
Veterans Administration, and H. M. Engle, M.D., Chief
Medical Director, Department of Medicine and Surgery,
Veterans Administration, Defendants-Appellees.
 Nos. 165, 166, Dockets 33978, 34160.
 United States Court of Appeals, Second Circuit.
 Argued Nov. 9, 1970.
Decided Jan. 15, 1971.
 
 Marvin M. Karpatkin, New York City (Karpatkin, Ohrenstein & Karpatkin, Michael N. Pollet, and Barry Satlow, New York City, on the brief), for plaintiff-appellant.
 Robert V. Zener, Dept. of Justice, Washington, D.C. (William D. Ruckelshaus, Asst. Atty. Gen., Washington, D.C. and Whitney North Seymour, Jr., U.S. Atty., Southern District of New York, on the brief), for defendants-appellees.
 Before LUMBARD, Chief Judge, and WATERMAN and ANDERSON, Circuit judges.
 ANDERSON, Circuit Judge:
 
 
 1
 Consumers Union appeals from that part of the district court judgment denying its request for an injunction ordering the Veterans Administration (VA) to disclose comparative scores and the scoring schemes relating to tests conducted by the VA on hearing aids. The court did order the VA to disclose the raw test data. 301 F.Supp. 796 (S.D.N.Y.1969).
 
 
 2
 Since 1955, the VA has been engaged in a program of testing hearing aids for distribution to veterans. It sends invitations to bid to hearing aid manufacturers six months before the start of the contract year, and companies submitting bids are required to provide the VA with samples which are tested to determine their acoustical and electronic qualities. The raw test data is converted to a 'quality point score' for each sample by means of mathematical formulae termed the 'scoring scheme.'
 
 
 3
 The invitations issued by the VA to bid for the 1968 contract and those in prior years included a statement of policy that the results of the tests were primarily for VA use only;[1] and, in accordance with this policy, the VA refused to disclose the scoring schemes and quality point scores to anyone. The raw scores were furnished to each manufacturer for his own model, and the testing methods, apparently, were revealed to anyone upon request.[2]
 
 
 4
 In September 1967, Consumers Union, a non-profit corporation which evaluates consumer products and publishes Consumers Reports, requested that the VA disclose the raw scores, scoring schemes and quality point scores for the 1965 and 1966 contract years pursuant to the Freedom of Information Act, 5 U.S.C. 552. The request was later amended to cover the 1968 contract year only. After the request was refused and all administrative remedies were exhausted, Consumers Union brought the present action on July 19, 1968 in the district court pursuant to 5 U.S.C. 552(a)(3),[3] seeking injunctive relief ordering the VA to disclose the three classes of information for the 1968 contract year.
 
 
 5
 The district court granted Consumers Union's requested injunction with respect to the demand for the raw scores, but denied the request for the scoring schemes and quality index scores. It held that although the express terms of the Act permitted disclosure, the district court possessed discretion to deny relief where release of the information would result in harm to the public interest. Consumers Union appealed, arguing that the district court does not possess discretion to deny what the express terms of the Act permit and that such discretion, if possessed by the court, was improperly exercised. The VA cross-appealed, claiming that by ordering disclosure of the raw test data the district court improperly interpreted certain provisions of the Act.[4]
 
 
 6
 Subsequent to the district court decision, the VA amended its solicitation for the 1970 contract year to permit disclosure of all three types of information sought by Consumers Union, and the information was disseminated. This policy was made retroactive to cover contract year 1968, and Consumers Union was provided with all the information it sought in the district court action. The Government filed a motion to dismiss the appeal as moot which was denied by this court on February 27, 1970. Subsequently the VA withdrew its cross-appeal, and in its brief in connection with the appeal of Consumers Union[5] renewed its argument that the appeal should be dismissed as moot.
 
 
 7
 The Government's claim of mootness is met first by Consumers Union's assertion that the doctrine of the law of the case precludes this court from reconsidering its prior determination that the appeal is not moot. See Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 566-567 (2 Cir. 1968); 1B Moore's Federal Practice P0.404. Assuming this contention to be correct,[6] nevertheless, the doctrine operates only to preclude a reconsideration of substantially similar, if not identical, issues. See 1B Moore's Federal Practice P0.404(1) at 404, P0.1404(4) at 453. The Government's motion to dismiss the appeal as moot was based on the fact that the relief requested had been supplied by the Government, thus an order by this court to disclose the information would be pointless. That motion was denied. The Government's position on its cross-appeal indicated it felt the disclosure was discretionary on its part and not required by the Freedom of Information Act, creating the distinct possibility that the dispute which generated the present action would recur. See e.g., Golden v. Zwickler, 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969); United States v. W. T. Grant Co., 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1953); Bowater Steamship Company v. Patterson, 303 F.2d 369, 371-372 (2 Cir.), cert. denied, 371 U.S. 860, 83 S.Ct. 116, 9 L.Ed.2d 98 (1962); United States v. Aluminum Co. of America, 148 F.2d 416, 448 (2 Cir. 1945). Moreover, the position of Consumers Union as a leading consumer-oriented investigator of products and its strong interest in communicating the results of tests on hearing aids[7] suggested that any such future dispute would very likely involve Consumers Union, so that its requisite personal stake in the recurrence of the dispute was present. See Note, Mootness on Appeal in the Supreme Court, 83 Harv.L.Rev. 1672, 1682-85 (1970). Nevertheless, subsequent events have actually made a recurrence of the dispute unlikely, and the law of the case doctrine, therefore, is inapplicable.
 
 
 8
 Consumers Union repeatedly emphasized in its briefs and at oral argument that should the Government concede the illegality of its initial refusal to disclose the information and disclaim any intention of a repetition of the illegal activity, it would agree that the appeal was moot. At oral argument, the Government conceded that the results of the tests on hearing aids did not come within any of the exemptions to the Act and that no public interest rationale justified a withholding of the information. Although Consumers Union's concession is, of course, not dispositive, we think that the Government's is. It is therefore quite clear that the Government will not again assert that hearing aid test results fall outside the Act or should be concealed in the public interest. Under the circumstances injunctive relief ordering production of the quality point scores and scoring schemes is unnecessary. See Bowater Steamship Company v. Patterson, supra, 303 F.2d at 371-372.
 
 
 9
 The appeal is therefore dismissed as moot.
 
 
 
 [1]
 The invitation to bid for the 1968 contract year contained the following language:
 The results of these tests and the evaluations based thereon are primarily for VA use only, without regard to any other governmental or private agency. It must be realized, however, that the (VA) may be required to release hearing aid test data, * * * to other agencies within the Federal Government structure. If this should occur, the (VA) would no longer retain control over release of the test data to the public.
 
 
 [2]
 The VA's policy of non-disclosure was modified in the 1969 solicitation to allow the VA, in its discretion, to release the raw scores
 
 
 [3]
 5 U.S.C. 552(a)(3) provides in pertinent part:
 On complaint, the district court of the United States * * * has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant. In such a case the court shall determine the matter de novo and the burden is on the agency to sustain its action.
 
 
 [4]
 The Government argued that the formulae and quality point scores were exempted from disclosure pursuant to 552(b)(2), (3), (4), (5), (7), which provide exemptions from disclosure for certain categories of information
 
 
 [5]
 Since it has released to Consumers Union all the information sought in the appeal, the Government professes no interest in the disposition of the appeal, save for an interest in interpretations of law having continuing significance
 
 
 [6]
 To the extent that the law of moot cases is a jurisdictional consideration (see Sibron v. New York, 392 U.S. 40, 57, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); Note, Mootness on Appeal in the Supreme Court, 83 Harv.L.Rev. 1672, 1673-74 n. 12 (1970)), we are not persuaded that the law of the case doctrine, based in the sound discretion of the court, would prevent a reconsideration of the earlier denial of the Government's motion. See 1B Moore's Federal Practice P0.404(1) at 405, P0.404(4) at 452. However, our disposition of the case makes it unnecessary to pass on this question
 
 
 [7]
 Consumers Reports had published findings on hearing aids, the data for which was presumably gained through its own research staff, in September 1950, January 1951 and January 1966 issues of the magazine