Fred **CHERRY** and Alan **Charmatz,**
Plaintiffs,

v.

The **POSTMASTER GENERAL** of the
United States, Defendant.

**71 Civ. 3351.**

United States District Court,
S. D. New York.

Sept. 22, 1971.

Fred Cherry and Alan Charmatz, pro se.

Whitney North Seymour, Jr., U. S. Atty., S. D. New York, by Gerald A. Rosenberg, New York City, for defendant.

GURFEIN, District Judge.

This is an action by Fred Cherry (Cherry) and Alan Charmatz (Charmatz) to convene a three-judge-court pursuant to 28 U.S.C. §§ 2282 and 2284 to enjoin the Postmaster General from seizing, detaining, impounding, forfeiting, destroying, or otherwise impeding the delivery of certain post cards which will be more fully described below.[1] Plaintiffs also request a declaratory judgment that 18 U.S.C. § 1718 and 39 U.S.C. § 3001 are unconstitutional on their face and as applied because they violate the First Amendment in several respects.[2]

---

[1] This will be treated as a request for "[a]n interlocutory or permanent injunction restraining the enforcement, operation or execution of any Act of Congress [18 U.S.C. § 1718 and 39 U.S.C. § 3001 in the instant case] for repugnance to the Constitution of the United States * * *" pursuant to 28 U.S.C. § 2282.

[2] 18 U.S.C. § 1718 reads as follows:
"All matter otherwise mailable by law, upon the envelope or outside cover or wrapper of which, or any postal card

## THE FACTS

The facts appear to be as follows. Cherry first entered into combat with the Postmaster General in 1966 when he attempted to disseminate through the mails post cards which admittedly defamed a certain clergyman as a homosexual.. The Postmaster General declared these post cards to be non-mailable under 18 U.S.C. § 1718 and 39 U.S.C. § 3001. Cherry contested the actions by the Postmaster General in a lawsuit which sought to convene a three-judge-court to enjoin the enforcement of §§ 1718 and 3001 and to declare the sections unconstitutional. Plaintiff lost all the way to the Supreme Court. See Cherry v. Postmaster General, 272 F.Supp. 982 (D.P.R.1967), aff'd without opinion by the First Circuit, cert. den., 391 U.S. 914, 88 S.Ct. 1809, 20 L.Ed.2d 653 (1968).

After that loss plaintiff Cherry continued his assault on homosexuality via the medium of the post card by mailing and continuing to mail post cards which are entitled "Homosexual Child-Molesters to Become School Teachers." In or about July 1971 the Post Office returned one of the post cards. Cherry went to the Brooklyn General Post Office on July 23, 1971 and inquired about the reasons for the return of the post card. The Government contends that Cherry was told at that time that the *reverse* side of the post card contained the endorsement "Return Requested" which had become obsolete for first class post cards such as his. Cherry contends that he was told by Post Office officials that

the post card was returned by error. Whichever story is true makes no difference in this decision. In any event, Cherry was dissatisfied with these explanations by three different postal officials.

Three days later Cherry went back to the Brooklyn General Post Office and presented one of these post cards for mailing. The matter was referred to Martin Shapiro, the Postmaster of the Brooklyn General Post Office. Shapiro, who apparently remembered Cherry's earlier conflict with the Post Office, was under the impression that a 1966 order required the Postmaster of each City to withhold post cards mailed by Cherry. Shapiro that same day sent a letter to the Judicial Officer of the United States Postal Service in Washington, D. C. in which he sought advice as to the mailability of Cherry's post card.

On July 28, 1971 the Judicial Officer wrote to Mr. Shapiro that he was wrong about the 1966 order which was limited only to the defamatory post cards which were the subject of Cherry's earlier action. He stated in the letter that Mr. Shapiro had no authority to withhold the post card at issue in the instant case.

On July 30, 1971 Mr. Shapiro received that letter from the Judicial Officer. Cherry's post card was released and mailed to the addressee. No post cards containing the material under the title "Homosexual Child-Molesters to Become School Teachers" subsequently mailed by Cherry have been detained or withheld

---

upon which is written or printed or otherwise impressed or apparent any delineation, epithet, term, or language of libelous, scurrilous, defamatory, or threatening character, or calculated by the terms or manner or style of display and obviously intended to reflect injuriously upon the character or conduct of another, is nonmailable matter, and shall not be conveyed in the mails nor delivered from any post office nor by any letter carrier, and shall be withdrawn from the mails under such regulations as the Postmaster General shall prescribe.

"Whoever knowingly deposits for mailing or delivery, anything declared by this section to be nonmailable matter, or knowingly takes the same from the mails for the purpose of circulating or disposing of or aiding in the circulation or disposition of the same, shall be fined not more than $1,000 or imprisoned not more than one year, or both."

39 U.S.C. § 3001(a) reads:

"(a) Matter the deposit of which in the mails is punishable under section 1302, 1341, 1342, 1461, 1463, 1714, 1715, 1716, 1717 or 1718 of title 18 is nonmailable."

by any Post Office.[3] Cherry and Charmatz then brought this lawsuit.[4]

Cherry has supplied the Court with copies of other post cards he has mailed which he alleges to be "news and editorial comment on matters of general, political, religious and sociological significance." Among these Cherry specifically says that he intends to mail a certain post card which criticizes John V. Lindsay, the Mayor of New York City, as being too lenient on the issue of homosexuality in our society.

The Government, in addition, has made certain concessions with respect to all the post cards placed in issue by this lawsuit which are crucial and which will be adverted to in detail below.

### CONCLUSIONS OF LAW

The Supreme Court has "stressed that the three-judge-court legislation is not 'a measure of broad social policy to be construed with great liberality,' but is rather 'an enactment technical in the strict sense of the term and to be applied as such.'" Mitchell v. Donovan, 398 U.S. 427, 431, 90 S.Ct. 1763, 26 L.Ed. 2d 378 (1970).

In Cherry's first tiff with the Postmaster General, Chief Judge Cancio of the District of Puerto Rico noted that the following requirements were necessary to convene a three-judge-court: (1) jurisdiction lies in this Court; (2) there is a likelihood of success; and (3) there is a likelihood of irreparable damage. See Cherry v. Postmaster General, 272 F.Supp. 982 at 984; see also Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 715, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962).

Cherry in this action does not meet any of the requirements to convene a three-judge-court pursuant to 28 U.S.C. §§ 2282 and 2284 since his application for injunctive relief has been rendered moot by the concessions of the Government.[5] The denial of a motion to convene a three-judge-court and to dismiss the complaint on the ground of mootness is an issue to be decided by the single District Judge to whom the application originally is made rather than by the three-judge-court. See Cook v. Bd. of Education of Salmon River Central School Dist. No. 1, 424 F.2d 995 (2 Cir. 1970).

The single post card which was delayed by mistake for four days has been released and forwarded. The Judicial Officer of the United States Postal Service has conceded "that Mr. Shapiro had no authority to withhold the post card at issue in the instant case" and the Government states that "no post cards subsequently mailed by Mr. Cherry in Brooklyn or elsewhere have been detained or withheld from delivery by any Post Office."

The Government further states that "[t]here is no Postal Order, Regulation or Statute prohibiting plaintiff from doing so or empowering a Postmaster to withhold such post cards. There is no likelihood of official interference with plaintiff Cherry's education campaign (against homosexuals by post card)." As to those post cards which plaintiff proposes to send villifying Mayor Lindsay's

---

3. Cherry in a reply affidavit without supplying the "information" states: "I have information which leads me to believe * * * that some of the post cards [mailed from post offices in other cities] * * * were seized and detained, for varying periods of time * * *" Cherry cannot hope to dissuade the Court from believing the Government's statement that it will not detain his post cards, by merely setting forth the conclusion in this circum-locutory manner. See, e. g. Black Unity League v. Miller, 394 U.S. 100, 89 S.Ct. 766, 22 L.Ed.2d 107 (1969). Even if Mr. Cherry had supplied sufficient factual support for this conclusion he would have been precluded by the Government's present concessions and by his own inability to show the imminence of recurring and irreparable harm the reasons for which will be discussed *infra*.

4. Plaintiff Charmatz sues because his right to receive Cherry's post cards has allegedly been violated.

5. It is, therefore, not necessary to determine whether a substantial constitutional question would have been raised had the case not been moot.

attitudes toward homosexuals and those which will "disseminate news and editorial comment on matters of general, political, religious and sociological significance," the Government makes the same concessions.

Although the Supreme Court has stated that "the burden [of showing mootness] is a heavy one" and that "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i. e., does not make the case moot," the Court has stated that "the case may nevertheless be moot if the defendant can demonstrate that 'there is no reasonable expectation that the wrong will be repeated.'" United States v. W. T. Grant Co., 345 U.S. 629, 632, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953).

The Court of Appeals for this Circuit has recently set guidelines with respect to the issue of mootness and what the Government must show in order to carry its heavy burden of proving mootness. In Consumers Union of United States, Inc. v. Veterans Administration, 436 F.2d 1363 (2 Cir. 1971) the Consumers Union moved for an injunction pursuant to the Freedom of Information Act requiring the VA to disclose the comparative results of certain hearing aid tests. The Government voluntarily disclosed that information and conceded "that the results of the tests on hearing aids did not come within any of the exemptions to the Act and that no public interest

rationale justified a withholding of the information." The Court held that this concession by the Government was conclusive and that it was "quite clear that the Government will not again assert that hearing aid results fall outside the Act or should be concealed in the public interest." The appeal was dismissed as moot.

In the instant case the Government makes virtually the same concessions with respect to the application of the United States Postal laws and regulations to the post cards in question. These concessions are as dispositive of this case, which is in its early stages, as were the concessions made at the oral argument of the appeal in *Consumers Union.*[6] If Cherry experiences difficulty in mailing post cards containing material different from that which is printed on the post cards at issue in the instant case, that controversy, when and if it comes into existence, must be decided in another lawsuit. With respect to the post cards in the instant case there is no "existing unresolved dispute which continues" as there was in Division 1287, Amalgamated Association of Street, Electric Railway & Motor Coach Employees of America et al. v. Missouri, 374 U.S. 74, 78, 83 S.Ct. 1657, 10 L.Ed. 2d 763 (1963) nor is there the continuing effect of an unlawful state injunction against free assembly and speech as there was in Carroll v. President and Com'rs of Princess Anne, 393 U.S. 175,

---

6. The Second Circuit has thus indicated that a representation by the United States Government that its past conduct will not recur must be taken as truthful. Apparently the possibility that the Government might renege on these concessions does not detract from a finding of mootness. The question of mootness as applied to the actions of the Postmaster has been considered before and a three-judge-court of this District has made it clear that the Postmaster can unilaterally moot attacks on the postal statutes by delivering the mail in question. See Lamont v. Postmaster General, 229 F.Supp. 913 (S.D. N.Y.1964), rev'd on other grounds, 381 U.S. 301, 85 S.Ct. 1493, 14 L.Ed.2d 398 (1965); but compare its companion case, Heilberg v. Fixa, 236 F.Supp. 405 (N.D.

Cal.1964), aff'd 381 U.S. 301, 85 S.Ct. 1493, 14 L.Ed.2d 398 (1965). The *instant* case is much more compelling than *Lamont* because here there is no additional act required of plaintiff in order to have his mail delivered to the addressee. Unlike *Lamont*, all Cherry has to do to achieve his goal is to mail his post cards; and Charmatz as a potential recipient need do nothing more if he is the addressee on one of Cherry's post cards. It is also worthy to note that the holding in *Lamont* was approved by a later three-judge-court in this District even after the Supreme Court's reversal. See Weiss v. Gardner, 263 F.Supp. 184 (S.D.N.Y. 1966), vacated as moot, 386 U.S. 9, 87 S.Ct. 861, 17 L.Ed.2d 700 (1967).

89 S.Ct. 347, 21 L.Ed.2d 325 (1968). In those cases, unlike the instant case, there were no concessions by the defendant as to the legality of the plaintiff's conduct.

Moreover, even if the case were not technically moot, the threat of recurrent injury would not be sufficient to justify the invocation of a three-judge-court since the whole case was grounded upon the initial, admitted and temporary mistake of a low ranking Post Office official—a mistake which is not likely to recur. That earlier post cards of a different variety were censored by the Post Office is irrelevant at this point since the Post Office action in that instance was upheld and since the plaintiff has had his day in Court on that matter. This holding is in keeping with the "strict application" of Section 2282 mandated by Mitchell v. Donovan, *supra,* even though the action purports to involve rights under the First Amendment. Cf. Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). The irreparable injury threatened by the State criminal prosecutions in *Dombrowski* definitely would have had an immediately "chilling effect" upon free speech. Given the Government's concessions and the other facts of this case, though, whatever temporary "chilling effect" the Post Office's initial mistake may have had upon Cherry's freedom of speech, the likelihood of recurrent, imminent and irreparable injury cannot now be shown. See Sellers v. Regents of University of California, 432 F.2d 493 (9 Cir. 1970), cert. den., 401 U.S. 981, 91 S.Ct. 1194, 28 L.Ed.2d 333 (1971); Duncombe v. State of New York, 267 F.Supp. 103 (S.D.N.Y.1967); Linehan v. Waterfront Commission of New York Harbor, 116 F.Supp. 401 (S.D.N.Y. 1953).

Since we have held that the case is technically moot, the portions of the complaint requesting a declaratory judgment that 18 U.S.C. § 1718 and 39 U.S.C. § 3001 are unconstitutional, cannot be saved. A declaratory judgment action pursuant to 28 U.S.C. § 2201 must

involve "an actual controversy" as required by Article III, Section 2, Clause 1, of the Constitution for the Court to have jurisdiction. See Watkins v. Chicago Housing Authority, 406 F.2d 1234 (7 Cir. 1969).

The Court on a motion to empanel a three-judge-court has the power to dismiss the complaint. See Utica Mutual Ins. Co. v. Vincent, 375 F.2d 129 (2 Cir.), cert. den., 389 U.S. 839, 88 S.Ct. 63, 19 L.Ed.2d 102 (1967). The complaint is dismissed.

So ordered.