544 F.2d 182
 FAMILIAS UNIDAS, an Unincorporated Association and Irma
Torrez, etc., Plaintiffs-Appellants,
v.
Dolph BRISCOE, Individually and in His Official Capacity as
Governor of the State of Texas, Jerome H. Decker,
Individually and in His Official Capacity as Medina County
Judge, Kenneth Florey, Individually and in His Official
Capacity as Superintendent of Schools of the Hondo
Independent School District, and E. J. Leinweber, Jr., Glen
McWilliams, Jack Been, Dr. J. E. Sandusky, Milton Renken,
Lloyd Hardt, and Henry Dominguez, Individually and in Their
Official Capacities as Members of the Board of Trustees of
the Hondo Independent School District, Defendants- Appellees.
 No. 75-1205.
 United States Court of Appeals,
Fifth Circuit.
 Dec. 16, 1976.
 
 Patricia Vasquez, San Antonio, Tex., Vilma S. Martinez, Mexican American Legal Defense & Ed. Fund, Sanford J. Rosen, San Francisco, Cal., for plaintiffs-appellants.
 John L. Hill, Atty. Gen., William C. Bednar, Jr., J. C. Davis, Asst. Attys. Gen., David M. Kendall, Jr., First Asst. Atty. Gen., John W. Odam, Jr., Executive Asst. Atty. Gen., Austin, Tex., for Dolph Briscoe.
 
 
 1
 J. C. Heinsley, Austin, Tex., for Kenneth Flory and Hondo Ind. School Dist. Bd. of Trustees.
 
 
 2
 Emerson Banack, Jr., San Antonio, Tex., for Jerome Decker.
 
 
 3
 Appeal from the United States District Court for the Western District of Texas.
 
 
 4
 Before THORNBERRY* and AINSWORTH, Circuit Judges, and HOFFMAN,** District Judge.
 
 WALTER E. HOFFMAN, District Judge:
 
 5
 In an appeal from the Western District of Texas, appellants originally sought relief at law and in equity, as well as statutory relief, to safeguard certain constitutional rights they alleged were violated and deprived by appellees. The case comes to us with no decision on the merits, save denials of both a temporary restraining order and a request to convene a three-judge district court.
 
 
 6
 The lower court granted appellees' motion to dismiss under Rule 37(b)(2)(C), Federal Rules of Civil Procedure, for appellants' failure to comply with a prior discovery order that compelled them to answer three interrogatories propounded by appellees. We are asked to review the trial court's rulings with regard to the following: dismissal of the action with prejudice for noncompliance with the prior discovery order; denial of injunctive relief; denial of a three-judge court; refusal to render a declaratory judgment; the resulting consideration of alleged actual damages; and we are now additionally asked to declare Title 1, Texas Educational Code § 4.28 unconstitutional on its face and as applied.
 
 
 7
 Prior to February 14, 1974, Familias Unidas (Familias) was organized as an unincorporated body for the purpose of asserting certain deficiencies in the Hondo Independent School District, Medina County, Texas. The school board failed to respond to the apparent satisfaction of Familias members. Beginning on or about February 14, 1974, certain parents began withdrawing their children from school and commenced a boycott. The parties dispute the nature of this boycott: appellants alleging that Familias is a nonviolent organization; appellees arguing that there was a threat of violence inherent in the Hondo School boycott.
 
 
 8
 On February 26, 1974, Medina County Judge Jerome H. Decker wrote a letter to Mrs. Irma Torrez as chairman of Familias. Pursuant to § 4.28 of the Texas Educational Code,[1] he requested the following information concerning the organization: (1) the official name of the organization and a list of its members, (2) its office and usual meeting place, (3) its officers, employees and representatives, (4) the purposes of the organization, and (5) a statement disclosing any affiliation with a parent organization. Mrs. Torrez replied on March 4, 1974, refusing to give the information as § 4.28 required the information to be filed with the county clerk, not the county judge.
 
 
 9
 On or about February 28, 1974, two days following Judge Decker's first letter, the school board which governs the Hondo schools filed a lawsuit styled Hondo Independent School District v. Irma Torrez, et al., in the 38th Judicial District Court, Medina County, Texas, to enjoin Familias, its membership, and other persons from boycotting classes. Additionally, Irma Torrez was personally charged with a violation of § 4.33, Texas Educational Code, a misdemeanor allegation for disruption of school classes.
 
 
 10
 Upon receipt of Irma Torrez's refusal to furnish Judge Decker with the requested information, Judge Decker corrected his error and reissued his request that the information be provided, this time to the County Clerk of Medina County. Appellants then filed their first complaint on March 7, 1974, naming as defendants the Governor of the State of Texas, Judge Decker as Medina County Judge, the Superintendent of the Hondo Independent School District, and certain members of the Board of Trustees of the Hondo Independent School District. The action was stated to arise pursuant to 42 U.S.C. §§ 1983, 1985 and 1988, with jurisdiction being conferred under 28 U.S.C. §§ 1343(3), (4) and 28 U.S.C. §§ 2201 and 2202. As a class, appellants challenged the constitutionality of § 4.28 of The Texas Educational Code and requested that a three-judge district court be convened as provided in 28 U.S.C. §§ 2281 and 2284; sought a temporary restraining order; demanded a permanent injunction against the statute's enforcement; requested a declaratory judgment; and asked for damages to the class, both actual and punitive, in the amounts of $100,000 for each award.
 
 
 11
 On March 13, 1974, a visiting judge denied appellants' motion for temporary restraining order enjoining appellees from enforcing § 4.28 as "moot"; the judge being advised that County Judge Decker had withdrawn his request for information regarding names of members of appellants' association.[2] Answers of all appellees were then forthcoming. A month following their answers, the school superintendent and members of the school board of trustees propounded interrogatories. Appellants did not answer the interrogatories until June 3, 1974, at which time they objected to interrogatories Nos. 4, 5 and 15. The disputed interrogatories, and the ones that are now in controversy, requested the following:
 
 
 12
 4. State the name or names of the person or persons included in the group of parents with children enrolled in the Hondo Public School system who are alleged in Paragraph 12 of the Plaintiffs' Original Complaint to have organized Familias Unidas.
 
 
 13
 5. State the name or names of the person or persons included in the group of parents mentioned in Paragraph 12 of the Plaintiffs' Original Complaint who had children enrolled in the school system of the Hondo Public Schools and list the name or names of the child or children of each individual, together with the age and grade in school of each such child.
 
 
 14
 15. State the name of any parent or parents who was or were included within the group of parents mentioned in paragraph 12 of Plaintiffs' Original Complaint who withdrew their children from the schools of the Hondo Independent School District as alleged in the third sentence of Plaintiffs' Original Complaint.
 
 
 15
 Appellants' objections to answering these interrogatories were grounded on protecting their right "to associate freely in order to advance the social and educational status of the Mexican American," and that appellees were "seeking to do indirectly what they are not entitled to do directly, and that is to discover the membership of Familias Unidas." Appellees responded on June 25, 1974, to appellants' objections with a motion to compel discovery, claiming entitlement to answers of the three interrogatories on the grounds of knowledge as to the identity of Familias who had brought suit against them, and for class action purposes.[3]
 
 
 16
 On September 26, 1974, the trial court denied the motion to convene a three-judge court, the judge stating: "I just don't feel like, since this is a consequential matter, if the local authorities that you are trying to enjoin say they are not going to enforce it, I can't see the threat . . . . You don't have a current threat that would involve the expense and the difficulty of having a three-judge court obviously, under these circumstances. It's just not that compelling. The question is insubstantial if there's no threat to you . . . ."
 
 
 17
 In refusing to accept N.A.A.C.P. v. Alabama, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958), as dispositive and in refusing appellants' motion to strike, the trial judge said: "Now, of course in this case that you are dealing with, the NAACP, as you know, is a defendant in this case and was hailed into court, brought into court as a defendant. In this particular case, you are actually seeking redress in this court. And I think the Court has an interest in knowing, and the public has an interest in knowing the true interest of the parties who are hailing the Defendants into a court . . . that's an entirely different situation."[4]
 
 
 18
 In a written order dated September 26, 1974, the court denied each of appellants' motions to strike and granted certain of appellees' motions to compel. The information so ordered was to be provided on or before October 2, 1974.
 
 
 19
 Appellants next filed a motion for leave to file an amended complaint, which was granted on November 5, 1974. The amended complaint eliminated in essence all class action allegations and reduced the ad damnum prayer from $100,000 for the class, to $10,000 for Irma Torrez, excluding all monetary damage relief for Familias and its members. On November 8, 1974, the trial court denied appellants' motion to reconsider its prior discovery order as well as its denial of appellants' request for a three-judge court. On November 19, 1974, the lower court refused to amend its two orders thus denying reconsideration. Appellants next requested the United States Court of Appeals for the Fifth Circuit to issue a writ of mandamus or prohibition. On the scheduled day of the trial in the district court, November 25, 1974, appellants moved to certify their interlocutory appeal and to stay all proceedings in the district court pending determination on appeal. The trial judge adjourned court until 1:15 p.m. that same day to allow time to receive word from the United States Court of Appeals. Without any word of a ruling and with an apparent denial of the stay motions, the trial judge proceeded by asking if the identity of the Familias members had been disclosed. He immediately dismissed the case for appellants' failure to answer interrogatories Nos. 4, 5 and 15. In its order entered on December 4, 1974, the court recited the facts of the discovery orders, found appellants' refusal to comply as willful, and determined that the answers to interrogatories Nos. 4, 5 and 15 were relevant to the issues of the
 
 
 20
 action. INJUNCTIVE RELIEF AND THE JURISDICTIONAL REQUIREMENT
 
 
 21
 OF "NECESSITY FOR THE RELIEF REQUESTED"
 
 
 22
 As noted above, the court denied a temporary restraining order for the reason that the state court judge had withdrawn his request of appellants for disclosure by them of their membership. Subsequently, the court refused to convene a three-judge court for the purpose of considering the constitutionality of Title I, Texas Educ.Code, § 4.28, and enjoining its enforcement.[5] Upon our consideration of Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), its companion cases and progeny, we uphold the decision of the trial court and affirm this portion of the prior proceeding.[6]
 
 
 23
 There is no evidence in the record of past applications or enforcements of § 4.28 with regard to appellants or anyone else.[7] The initial request made by the county judge of Familias provided sufficient state action of direct consequence and effect upon appellants to establish standing between the parties. The allegation that this official demand for disclosure pursuant to § 4.28 was in conflict with First Amendment rights, alleged to be specifically secured under N.A.A.C.P. v. Alabama, ex rel. Patterson, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958), provided an actual case and controversy for the federal court to take jurisdiction. In terms of the injunctive relief requested under 28 U.S.C. §§ 2281, 2284, it is critical for our purposes that jurisdiction be considered in light of the relief prayed, that is, relief from allegedly offensive state action. Manifestly, injunctive relief was not required once the aforementioned request by letter was withdrawn with an assurance that no further requests would be made of appellants. At that time, the confrontation by the state with the members of Familias ceased; there was no longer a factual situation suitable for injunctive relief.
 
 
 24
 Appellants here fail to qualify as proper parties plaintiff seeking injunctive relief. While we well recognize a showing of deprivation in exercise of First Amendment associational rights can constitute an "irreparable loss" that can indeed be "great," there is no proof of injury, direct or indirect, that has been incurred, or would be likely, beyond a mere "chilling effect" or a fear that amounts to no more than appellants "feel inhibited." Younger, supra, at 42, 91 S.Ct. 746.
 
 
 25
 Turning away in our analysis from the "substantial injury" factor in the Younger formula to its second prerequisite, the withdrawal of the § 4.28 request totally dissipated any "immediacy" for injunctive relief from state action. Appellants cannot reasonably assume for argument that criminal prosecution for noncompliance is likely, more than a mere possibility, once that same statutory demand to which they are required to comply has been withdrawn without additional or further state action.
 
 
 26
 Finally, the assurances[8] of the county judge that he would not in the future issue similar § 4.28 requests to appellants dissipated all reasonable necessity for granting the relief requested.[9] The effect of the withdrawal was to cease the allegedly offensive state action of applying § 4.28. This cessation of state action, in turn, foreclosed any "immediacy" for federal intervention, regardless of the question of "substantial injury." Also, the assurance against repetition absolutely and altogether dissipated any discernible possibility of need for injunctive relief since the § 4.28 request then stood alone, as a single incident without precedent or likely prospect of repetition.
 
 
 27
 Furthermore, we note that had the necessity for the relief requested remained by the facts, appellants in any event could not escape, as they have argued, an application of the Younger test via the bad faith-harassment exception of Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). They have alleged no facts that tend to show such an intended use of § 4.28, or any likelihood at all of criminal prosecution for noncompliance with the § 4.28 request while it remained outstanding. But for the bare allegation, they have shown no conspiracy by state officials to accomplish similar purposes in any manner whatsoever.
 
 
 28
 We stated in Southwestern Bell Telephone Company v. Communications Workers of America, AFL-CIO, 454 F.2d 1333 (5 Cir. 1971), at 1334: "The test of mootness in a case for injunctive relief is whether the injury is continuing or is likely to be repeated. Douds v. International Longshoremen's Association, 242 F.2d 808 (2d Cir. 1957) . . . ."[10] Withdrawal of the § 4.28 request precluded, for the most part, any continuing character of injury. Following that, the bona fide assurance not to make another request foreclosed any likelihood of alleged injury to continue, or to be repeated in the future. Magtab Publishing Corp. v. Howard, 169 F.Supp. 65 (W.D.La.1959), at 70 n. 12. However, to conclude the fundamental underlying case or controversy moot would require that we ignore the undisputed fact that the county judge did apply § 4.28 to appellants, and the possibility that appellants did suffer injury as a consequence.
 
 DECLARATORY JUDGMENT RELIEF AND MOOTNESS
 
 29
 In Steffel v. Thompson, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974), a unanimous Court decided federal declaratory relief is not precluded where a prosecution based upon an assertedly unconstitutional state statute has been threatened, but is not pending, even if a showing of bad faith enforcement or harassment has not been made. Had the Court of Appeals for the Fifth Circuit correctly viewed injunctive relief as inappropriate in Steffel, the Supreme Court held it erred in treating the requests for injunctive and declaratory relief as a single issue and in holding that a failure to demonstrate irreparable injury precluded the granting of declaratory relief.[11] Congress plainly intended, the Court held, that a declaratory judgment be available as a milder alternative to the injunction for testing the constitutionality of state criminal statutes. Steffel, supra, see discussion at 462-473, 94 S.Ct. 1209. Lastly, distinguishing Cameron v. Johnson, 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968), the Court held that in a determination of whether it is appropriate to grant declaratory relief when no state criminal proceeding is pending, it is immaterial whether the attack is made on the constitutionality of the state criminal statute, on its face or as applied. Steffel, supra, at 473-475, 94 S.Ct. 1209.
 
 
 30
 The trial court made no independent determination with regard to appellants' declaratory judgment action before it dismissed the entire case under Rule 37(b). We are of the opinion that while the developing facts of this case precluded any necessity for injunctive relief, the underlying case or controversy was not dissipated so greatly as to render the entire matter moot, thus alleviating jurisdiction from the court in making a declaratory judgment. We have affirmed that the withdrawal and reassurance concerning § 4.28 foreclosed the necessity of injunctive relief, irrespective of its prerequisites. Questions of necessity and propriety of the relief sought, while jurisdictional, should not be confused with the doctrine of mootness. Cessation and reassurance regarding future state action may in practicality render an action for injunctive relief "moot" in terms of the relief sought, while leaving unaffected the actual underlying case or controversy for a declaratory judgment.
 
 
 31
 The issue of mootness where constitutional questions are raised is not without some difficulty. Discussion of the "different considerations" for propriety in granting declaratory, as distinguished from injunctive, relief obscures the assessment of jurisdiction. There must be a "case or controversy" within the meaning of Muskrat v. United States, 219 U.S. 346, 31 S.Ct. 250, 55 L.Ed. 246 (1911), see historical discussion at 356-360, 31 S.Ct. 250. In deciding the constitutionality and construction of certain acts of Congress relating to the distribution and allotment of lands and funds of the Cherokee Indians to be outside the ambit of judicial power, Muskrat held:
 
 
 32
 . . . . Is such a determination within the judicial power conferred by the Constitution, as the same has been interpreted and defined in the authoritative decisions to which we have referred? We think it is not. That judicial power, as we have seen, is the right to determine actual controversies arising between adverse litigants, duly instituted in courts of proper jurisdiction. The right to declare a law unconstitutional arises because an act of Congress relied upon by one or the other of such parties in determining their rights is in conflict with the fundamental law. The exercise of this, the most important and delicate duty of this court, is not given to it as a body with revisory power over the action of Congress, but because the rights of the litigants in justiciable controversies require the court to choose between the fundamental law and a law purporting to be enacted within constitutional authority, but in fact beyond the power delegated to the legislative branch of the Government. This attempt to obtain a judicial declaration of the validity of the act of Congress is not presented in a "case" or "controversy," to which, under the Constitution of the United States, the judicial power alone extends. It is true the United States is made a defendant to this action, but it has no interest adverse to the claimants. The object is not to assert a property right as against the Government, or to demand compensation for alleged wrongs because of action upon its part. The whole purpose of the law is to determine the constitutional validity of this class of legislation, in a suit not arising between parties concerning a property right necessarily involved in the decision in question, but in a proceeding against the Government in its sovereign capacity, and concerning which the only judgment required is to settle the doubtful character of the legislation in question. . . .
 
 
 33
 Id. at 361-362, 31 S.Ct. at 255.
 
 
 34
 The actions were dismissed for lack of jurisdiction because there was no case or controversy in the sense of legal adversity. The proceeding against the defendant was in its sovereign capacity rather than a party with an adverse interest or an alleged wrongdoer. The same is true of a declaratory judgment action. Aetna Life Insurance Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937).
 
 
 35
 The declaratory judgment action has enlarged the cases that may be entertained by the courts, provided there is sufficient personal stake and adversariness. Powell v. McCormack, 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969); Aetna Life Ins. Co. v. Haworth, supra. It has been stated that courts consider to some extent the public interest in the decision to give or withhold relief. Virginian Ry. Co. v. System Federation No. 40, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789 (1937). There is a tendency in declaratory judgment cases to construe the mootness doctrine more narrowly. Porter v. Lee, 328 U.S. 246, 66 S.Ct. 1096, 99 L.Ed. 1199 (1946); Lehigh Coal & Nav. Co. v. Central R. of New Jersey, 33 F.Supp. 362 (E.D.Pa.1940). However, the courts have not hesitated to find an action moot where issues of constitutional rights had been presented. See generally: Diffenderfer v. Central Baptist Church of Miami, Florida, Inc., 404 U.S. 412, 92 S.Ct. 574, 30 L.Ed.2d 567 (1972); Gray v. Board of Trustees, 342 U.S. 517, 72 S.Ct. 432, 96 L.Ed. 540 (1952); Norman v. Connecticut State Board of Parole, 458 F.2d 497 (2 Cir. 1972); Watkins v. Chicago Housing Authority, 406 F.2d 1234 (7 Cir. 1969); Cherry v. Postmaster General, 332 F.Supp. 785 (S.D.N.Y.1971), aff'd., 460 F.2d 1063 (2 Cir. 1972); Becket v. Marks, District Director, Immigration & Naturalization Service, et al., 358 F.Supp. 1180 (S.D.N.Y.1973); Sigma Chi Fraternity v. Regents of University of Colorado, 258 F.Supp. 515 (D.C.Colo.1966).
 
 
 36
 Even in injunction actions, the fact that the particular act complained of has ceased or has been completed does not necessarily render the underlying controversy moot. Gray v. Sanders, 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed.2d 821 (1963); Woods v. Wright, 334 F.2d 369 (5 Cir. 1964); cf. Two Guys from Harrison-Allentown, Inc. v. McGinley, 366 U.S. 582, 81 S.Ct. 1135, 6 L.Ed.2d 551 (1961), rehearing denied, 368 U.S. 869, 82 S.Ct. 21, 7 L.Ed.2d 69 (1961). Cessation of an allegedly unfair labor practice is not sufficient to render moot an action pursuant to the National Labor Relations Act. J. I. Case Co. v. N. L. R. B., 321 U.S. 332, 64 S.Ct. 576, 88 L.Ed. 762 (1944); N. L. R. B. v. Denver Bldg. & Const. T. C., 192 F.2d 577 (10 Cir. 1951). Generally, in these latter labor injunction cases, likelihood of recurrence appears determinative. When the court views the public interest as substantial, a lesser possibility of repetition may suffice for jurisdiction. Moore v. Ogilvie, 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969). A labor injunction case may nevertheless be moot if the defendant can demonstrate that "there is no reasonable expectation that the wrong will be repeated." United States v. W. T. Grant Co., 345 U.S. 629 (1953), at 633, 73 S.Ct. 894, at 897, 97 L.Ed. 1303 (citing United States v. Aluminum Co. of America, 148 F.2d 416 (2 Cir. 1945), at 448). On the other hand, "(F)or to say that the case has become moot means that the defendant is entitled to a dismissal as a matter of right, Labor Board v. General Motors Corp., 2 Cir., (1950) 179 F.2d 221. The courts have rightly refused to grant defendants such a powerful weapon against public law enforcement." United States v. W. T. Grant Co., supra, at 632, 73 S.Ct. at 897.
 
 
 37
 While the necessity for relief arising from alleged confrontation of the state with First Amendment rights was extinguished for injunctive purposes, and may be found equally inappropriate for declaratory relief once the merits are considered, we are of the opinion that the Fourteenth Amendment issues of due process in the statute's initial application remain unresolved and unaffected by the county judge's withdrawal and reassurance. Whether or not § 4.28 is constitutional as applied to appellants remains in controversy, and we are also of the opinion from Steffel and its companion cases, appropriate for declaratory judgment. Appellants have not relinquished their claim that the statute is unconstitutional as it has been previously applied to them. The county judge has refused to say he will never enforce it.[12] The Governor of the State of Texas refuses to concede unconstitutionality in any manner.[13] There remains sufficient adversity over the statute's past application to appellants for there to be a live, justiciable case or controversy within the meaning of Muskrat, supra.
 
 
 38
 While a defendant may unilaterally act in such a manner as to cure the allegedly offensive conduct and foreclose the necessity for injunctive relief, that same unilateral action by the defendant may have no effect whatsoever on the necessity for declaratory judgment relief. Only when such unilateral action resolves or extinguishes all rights can the case or controversy be said to be no longer live and justiciable.
 
 
 39
 If we were to hold the underlying case or controversy moot, thus withdrawing jurisdiction from all three actions alleged here by appellants, we would foreclose from appellants an opportunity for proof of any injury, however slight or whatever character, they may have suffered as a consequence of the § 4.28 request. The statute was applied, we do not have an academic or hypothetical situation. If we were to hold moot only the injunctive and declaratory actions, without consideration of possible injury, it would indeed be an anomaly if damages were subsequently awarded under 42 U.S.C. § 1983. While the claim under § 1983 is separate and distinct, the instance of the statute's application is the basis for the relief sought in both actions.
 
 
 40
 Until the merits of injury are presented in the § 1983 action, it cannot be said appellants' underlying case or controversy in the statute's application is moot. The grave danger in such a premature conclusion is obvious: We would allow a defendant who ceases and reassures the federal court against similar conduct a potential method of abuse, "capable of repetition yet evading review." Southern Pacific Terminal Co. v. I. C. C., 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911). We cannot create a possibility of repetition without considering the gravity of the consequence. Until the merits of a past application of a statute alleged to be in violation with requirements of due process have been considered, the mere possibility of repetition without review is sufficient. Since appellants' claims cannot be presently litigated in a pending state proceeding, for there is none pending, and in view of Steffel and its companion cases, we hold a declaratory judgment appropriate on the issue of the constitutionality of the past application of § 4.28 to appellants. The unilateral action by appellees here does not give them a right of dismissal of the allegations that they wrongly applied § 4.28 to appellants.
 
 DISMISSAL UNDER RULE 37(b)(2)(C)
 
 41
 Aside from the redress asserted above regarding the necessity for making a declaratory judgment, we examine separately the Rule 37(b)(2)(C) dismissal since it has the further impact of denying consideration on the merits of appellants' monetary claim of $10,000 for Irma Torrez. It is generally recognized that a Rule 37(b) sanction makes the prior discovery order final and therefore subject to review on appeal.[14] "If sanctions are imposed under Rule 37(b), . . . on appeal from the order imposing sanctions the appellate court will consider the propriety of the prior order for discovery."[15] While trial court's discretion regarding discovery orders is usually sustained, as it should be in most cases for sound policies of judicial review,[16] the appellate court will reverse where the trial court abuses its discretion to the prejudice of a party.[17]
 
 
 42
 In the case of Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers, 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958), the Supreme Court, in dicta, discussed the relevance of "willfulness" and "good faith." The Court obliterated the lower court's apparent distinction between "failure" and "refusal" to comply with its discovery order, thus reversing and remanding the case. The Court observed, at 207-208, 78 S.Ct. at 1093:
 
 
 43
 . . . . Petitioner has urged that the word "refuses" implies willfulness and that it simply failed and did not refuse to obey since it was not in willful disobedience. But this argument turns on too fine a literalism and unduly accents certain distinctions found in the language of the various subsections of Rule 37. Indeed subsection (b), as noted above, is itself entitled "Failure to Comply with Order." (Italics added.) For purposes of subdivision (b)(2) of Rule 37, we think that a party "refuses to obey" simply by failing to comply with an order. So construed the Rule allows a court all the flexibility it might need in framing an order appropriate to a particular situation. Whatever its reasons, petitioner did not comply with the production order. Such reasons, and the willfulness or good faith of petitioner, can hardly affect the fact of noncompliance and are relevant only to the path which the District Court might follow in dealing with petitioner's failure to comply. (Emphasis supplied.)In reconciling two seemingly contradictory landmark decisions,[18] the Court further explained its rationale:
 
 
 44
 . . . But the Court took care to emphasize that the defendant had not been penalized ". . . for a failure to do that which it may not have been in its power to do." All the State had required "was a bona fide effort to comply with an order . . ., and therefore any reasonable showing of an inability to comply would have satisfied the requirements . . ." of the order. (Emphasis added.) 212 U.S., at page 347, 29 S.Ct. at page 378.
 
 
 45
 In the Fifth Circuit we have adopted the view that the presence or lack of good faith is relevant to the orders which should be made from the bench and the severity of the sanctions imposed on a delinquent party. B. F. Goodrich Tire Company v. Lyster, 328 F.2d 411 (5 Cir. 1964), citing Societe Internationale, supra, at 415.
 
 
 46
 In view of appellants' amended complaint, which in essence dropped all class action allegations and prayers for monetary relief, we doubt the relevance of the membership identity of Familias Unidas. Justification that their identity would be admissible at trial is no justification at all. Familias and its members are one and the same; they both occupy the same position from the nature of their claim as being more analogous to that of a defendant than that of a plaintiff. To require them to forfeit that which they seek to protect in order that they might receive federal assurance that they were indeed entitled to it initially would be an abdication by the federal court of not only its federal stature, but its judicial robes as well.
 
 
 47
 The language of N. A. A. C. P. v. Alabama, supra, is much too strong to permit this result. For reasons discussed above, we cannot agree with the trial court's distinction of that case on the basis that the N.A.A.C.P. was the defendant there. Appellees had ample discovery means and opportunity, as provided by the Federal Rules, to depose the chief officer of Familias, Irma Torrez. As to any interest appellees may have had with regard to identity of the membership, it was completely dissipated by the withdrawal of the class action. The fact that its name and its legal interests as an unincorporated association remain connected with the litigation is of no real consequence, save a personal one to the membership. Similarly, we can find no interest of the public at large, or the trial court itself, that could outweigh the private rights of association and expression upheld in N. A. A. C. P. v. Alabama, supra.
 
 
 48
 We find that the district court abused the discretion provided under Rule 37(b)(2)(C) in that its sanction of dismissal far outweighed any burdens attendant to appellants' failure to comply with the prior discovery order. Also, we question strongly the propriety of the initial order in view of appellants' underlying claim. Accordingly, we must reverse the judgment of the lower court in this regard and remand the action for further proceedings, not inconsistent with this entire opinion, upon the merits of monetary damages.[19]
 
 
 49
 _______ 5,
 
 
 50
 We affirm the lower court's dismissal of requests for a three-judge court and injunctive relief since appellees' actions, subsequent to the filing of the original complaint, dissipated any necessity for the relief sought, thus alleviating the court of jurisdiction over this phase of the case. Also, we affirm the denial below insofar as appellants fail to demonstrate sufficient substantial injury, irreparable harm, immediacy, or an unusual circumstance, as required and applied by Younger. Second, with regard to the action for declaratory judgment, having determined that appellees' cessation and reassurance against future conduct neither forecloses the necessity for the relief requested nor resolves all adverse interests presented by appellants to be in controversy, we remand that action for further proceedings not inconsistent with this opinion. Third, we reverse the Rule 37(b)(2)(C) dismissal as an abuse of trial court discretion and remand the claim pursuant to 42 U.S.C. § 1983, et seq., for further proceedings.
 
 
 51
 AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
 
 
 
 *
 Judge Thornberry was a member of the panel that heard oral arguments but due to illness did not participate in this decision. The case is being decided by a quorum. 28 U.S.C. § 46(d)
 
 
 **
 District Judge of the Eastern District of Virginia, sitting by designation
 
 
 [1]
 "Sec. 4.28. Interference with the Peaceful Operation of the Public Schools. (a) In order to maintain law, peace, and order in the operation of the public schools without the use of military force, the county judge of each county in this state is authorized to require any organization, operating or functioning within the county and engaged in activities designed to hinder, harass, or interfere with the powers and duties of the State of Texas in controlling and operating its public schools to file with the county clerk, within seven days after such request is made, the following information, subscribed under oath before a notary public:
 (1) the official name of the organization and list of members;
 (2) the office, place of business, headquarters, or usual meeting place of the organization;
 (3) the officers, agents, servants, employees, or representatives of the organization;
 (4) the purpose or purposes of the organization; and
 (5) a statement disclosing whether the organization is subordinate to a parent organization and, if so, the name of the parent organization.
 (b) The term 'organization' as used in this section means any group of persons, whether incorporated or unincorporated, and includes any civic, fraternal, political, mutual benefit, legal, medical, trade, or other kind of organization.
 (c) The information filed pursuant to Subsection (a) of this section is hereby declared public and subject to the inspection of any interested party.
 (d) Any person having custody or control of the records of an organization who fails to furnish the information requested or any other person or organization who shall violate any provision of this section shall be deemed guilty of a misdemeanor and upon conviction shall be fined not less than $50 nor more than $200, and each day of violation shall constitute a separate offense."
 
 
 [2]
 In July, 1974, approximately four months after the denial of the temporary restraining order, Judge Decker testified by deposition. He reiterated his withdrawal of the request for information from Familias, but suggested that he "would possibly write another letter" if confronted with an essentially similar situation at a later date, but he remained firm in his assertion to the visiting judge that he would not continue to request the information as to Familias in this particular situation
 
 
 [3]
 We express no opinion on appellees' rights to have these interrogatories answered if the appellants had persisted in their class action with a claim for damages to the class. In argument, appellants' counsel conceded that this would raise a very close issue
 
 
 [4]
 Record, 2nd Supplement; Call of the Docket, 9/26/74 (Filed 4/22/75); Transcript, at p. 5, 11. 9-16
 
 
 [5]
 This action was taken while the suit was still an uncertified class action proceeding and prior to the Rule 37(b)(2)(C) dismissal
 
 
 [6]
 We need not consider the possible effect of P.L. 94-381, 90 Stat. 1119, which severely restricts three-judge courts since § 7 provides that the Act "shall not apply to any action commenced on or before the date of enactment", the date of enactment being August 12, 1976
 
 
 [7]
 The county judge made an identical request of another organization under letter of the same date as the letter addressed to Familias. See Record, 1st Supplement, Deposition of Jerome H. Decker, 7/23/74 (Filed 2/7/75), p. 19, 1. 25 p. 22, 1. 5
 
 
 [8]
 See Record: 2nd Supplement, Call of the Docket, 9/26/74 (Filed 4/22/75); Transcript, at p. 5, 1. 22-p. 6, 1. 2; and, 1st Supplement, Deposition of Jerome H. Decker, 7/23/74 (Filed 2/7/75), at p. 44, 11. 7-10
 
 
 [9]
 We note in the statement of facts in appellants' First Complaint a factual allegation that a state civil suit was instituted by the Hondo Independent School Board, named parties defendant, against Familias and Ms. Torrez. Record, Vol. 1, Plaintiffs' Original Complaint, Paragraph 14. While arguably its nature and fact of pendency could affect our decision regarding a lack of necessity for granting relief from state action, we cannot consider it now
 
 
 [10]
 Cf., Petersen v. Talisman Sugar Corporation, 478 F.2d 73 (5 Cir. 1973), at 78
 
 
 [11]
 The Court observed: ". . . . Requiring the federal courts totally to step aside when no state criminal prosecution is pending against the federal plaintiff would turn federalism on its head. When federal claims are premised on 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3) as they are here we have not required exhaustion of state judicial or administrative remedies, recognizing the paramount role Congress has assigned to the federal courts to protect constitutional rights. See, e. g., McNeese v. Board of Education, 373 U.S. 668 (83 S.Ct. 1433, 10 L.Ed.2d 622) (1963); Monroe v. Pape, 365 U.S. 167 (81 S.Ct. 473, 5 L.Ed.2d 492) (1961). But exhaustion of state remedies is precisely what would be required if both federal injunctive and declaratory relief were unavailable in a case where no state prosecution had been commenced." Steffel, supra, at 472-473, 94 S.Ct. at 1222
 
 
 [12]
 See: Record, 1st Supplement; Deposition of Jerome H. Decker, 7/23/74 (Filed 2/7/75), p. 33, 1. 20-p. 36, 1. 17; and, 2nd Supplement; Call of the Docket, 9/26/74 (Filed 4/22/75); Transcript, at p. 2, 11. 19-24, p. 7, 1. 19-p. 8, 1. 10
 
 
 [13]
 Record, 2nd Supplement; Call of the Docket, 9/26/74 (Filed 4/22/75); Transcript, at p. 6, 11. 8-19
 
 
 [14]
 8 Wright & Miller, Federal Practice and Procedure: Civil § 2006, at 140-141 (perm. ed. rev.repl. 1969)
 
 
 [15]
 Id., Civil § 2289, at 791
 
 
 [16]
 National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (Decided June 30, 1976) held inappropriate an appellate reversal of a Rule 37 dismissal where the Third Circuit found only insufficient evidence to sustain the sanction. Lenity by an appellate court and its benefit of hindsight cannot "wholly supplant other and equally necessary considerations embodied in that Rule (37)," especially the Rule's chief purposes of deterrence and discipline. We distinguish that case with our own. Unlike the appellate court in National Hockey, we do question "the findings of historical fact" in that the answers to the contested interrogatories were neither crucial nor in fact necessary. We find the dismissal an abuse of discretion because we view the original order to compel inappropriate
 
 
 [17]
 8 Wright & Miller, Civil § 2176, at 558
 
 
 [18]
 Cf. Hovey v. Elliott, 167 U.S. 409, 17 S.Ct. 841, 42 L.Ed. 215 (1897), with Hammond Packing Company v. Arkansas, 212 U.S. 322, 29 S.Ct. 370, 53 L.Ed. 530 (1908)
 
 
 [19]
 The specific nature of § 1983 damage Irma Torrez claims in her prayer for $10,000 is not apparent from the record. Under the recent decision of Paul, Chief of Police, Louisville, et al v. Davis, 424 U.S. 693 (1976), at 712-714, 96 S.Ct. 1155, 47 L.Ed.2d 405, we would assume Mrs. Torrez could recover no award for a mere claim of damage to her reputation, however, she may be entitled to at least nominal damages for violation of privacy in association