**MOVIE WORLD, INC., d/b/a Peek-a-Rama and Camera's Eye, Plaintiff,**

v.

**Harvey I. SLOANE et al., Defendants.**

**No. C 77–0509–L(B).**

United States District Court,
W. D. Kentucky,
Louisville Division.

Feb. 13, 1978.

---

David Kaplan, Louisville, Ky., for plaintiff.

John T. Fowler, III, City Law Director, by Winston E. King and Paul V. Guagliardo, Louisville, Ky., for defendants.

## ORDER AND MEMORANDUM OPINION

BALLANTINE, District Judge.

This action was brought by plaintiff under 28 U.S.C. § 1343(3) and 42 U.S.C. § 1983, alleging violation of its constitutional rights by the defendants under color of an Ordinance.

Plaintiff seeks a preliminary injunction restraining defendants from enforcing the provisions of the City of Louisville's Ordinance 69, Series 1977. Plaintiff also seeks a declaratory judgment finding the Ordinance unconstitutional and a permanent injunction restraining defendant from enforcing it.

The defendants have moved that the plaintiff's motion for preliminary injunction be overruled, and also that a declaratory judgment be issued declaring the Ordinance to be constitutional as written and in its application to the plaintiff.

The Board of Aldermen of the City of Louisville, in its Findings, Declarations of Public Policy and Purpose, stated that, as a matter of public policy, "the regulating of adult entertainment activities within the city limits is a public necessity and is required in the interest of the health, safety, welfare and the economic and aesthetic well-being of the people and is required (i) to protect property values; (ii) to prevent blight and the deterioration of the City's neighborhoods; (iii) to promote the return of residents and businesses to the City's neighborhoods; and (iv) to decrease the incidents of crime and juvenile delinquency". Section 1(B), Ordinance No. 69, Series 1977.

The plaintiff alleges (1) that the requirement of obtaining a license will deny his right to engage in business; (2) that enforcement of the Ordinance will infringe upon the exercise of First Amendment rights, based upon no valid public purpose or state interest; (3) that procedural safeguards are lacking which assure prompt judicial review, thereby violating the First and Fourteenth Amendments; (4) that the Ordinance does not set standards with required specificity, resulting in a "chilling effect" upon First Amendment rights; (5) that enforcement diminishes his ability to maintain business, increases costs, discourages customers and has added unnecessary legal expenses; and (6) that the Ordinance is unconstitutional on its face. The plaintiff, in violation of Rule 7(a), Rules of the United States District Court for the Western District of Kentucky, fails to cite a single authority in support of these allegations, other than generally accepted principles of constitutional law.

In response to the motion for preliminary injunction, the defendants urge that the harm of which plaintiff complains is not immediate or irreparable, a prerequisite for injunctive relief, citing *U. S. v. American Friends Service Committee*, 419 U.S. 7, 95 S.Ct. 13, 42 L.Ed.2d 7 (1974). Further, defendants reply that mere litigation expense, even substantial and unrecoupable costs, does not constitute "irreparable injury", citing *Renegotiation Board v. Bannercraft Clothing Co., Inc.*, 415 U.S. 1, 24, 94 S.Ct. 1028, 39 L.Ed.2d 123 (1974). Both cases follow well-established lines of thought, as

the "irreparable injury" concept is supported by *Myers v. Bethelehem Shipbuilding Corp.,* 303 U.S. 41, 51–52, 58 S.Ct. 459, 82 L.Ed. 638 (1938) and it has long been held that an injunction is "to be used sparingly, and only in a clear and plain case". *Irwin v. Dixion,* 50 U.S. (9 How.) 10, 33, 13 L.Ed. 25 (1850).

■ Federal courts will not intervene by way of injunction or declaration in an existing state criminal prosecution unless exceptional circumstances exist, i. e., the threat of irreparable injury is both great and immediate. Such threat may be shown by a patently and flagrantly unconstitutional statute, or if there has been bad faith and harassment in its enforcement. *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

*Younger* requires more than a mere allegation and more than a "conclusory" finding to bring a case within the harassment exception. Such a finding must be supported by specific evidence from which it can be inferred that state officials have been enforcing the statute against the plaintiffs in bad faith and for purposes of harassment. *Grandco Corp. v. Rochford,* 536 F.2d 197 (7th Cir. 1976). See *Familias Unidas v. Briscoe,* 544 F.2d 182 (5th Cir. 1976); and *Williams v. State of Washington,* 554 F.2d 369 (9th Cir. 1977).

The test and principles set forth in *Younger* can readily be applied to civil matters as well. The best approach is not to regard labels "civil" and "criminal" as controlling, but to analyze the competing interests which each case presents. *Palaio v. McAuliffe,* 466 F.2d 1230, 1233 (5th Cir. 1972).

The Supreme Court recently affirmed such an approach where injunctive relief was sought, not against the judicial branch of the state government, but against those in charge of an executive branch of an agency or local governments. *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976).

The remaining allegations deal with violations of constitutional rights, either under the First Amendment right to free speech or the Fourteenth Amendment's guarantee of due process. Both parties have sought a declaratory judgment pertaining to the constitutionality of the Ordinance as written and in its application to the plaintiff.

Beginning with *Gitlow v. New York,* 268 U.S. 652, 45 S.Ct. 625, 69 L.Ed. 1138 (1925), the Supreme Court of the United States held that the liberty of speech and of the press which the First Amendment guarantees against abridgement by the federal government is within the liberty safeguarded by the Due Process Clause of the Fourteenth Amendment. While the plaintiff can arguably assert First Amendment rights, the state may subject the exercise of First Amendment freedoms to the prior restraint of a license requirement. The license requirement must, however, provide "narrow, objective, and definite standards to guide the licensing authority". *Shuttlesworth v. Birmingham,* 394 U.S. 147, 151, 89 S.Ct. 935, 938, 22 L.Ed.2d 162 (1969). See *Lovell v. Griffin,* 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1938); *Schneider v. State of N. J.,* 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939) and *Interstate Circuit, Inc. v. Dallas,* 390 U.S. 676, 88 S.Ct. 1298, 20 L.Ed.2d 225 (1968).

The Court in *Schneider,* supra, observed that where legislative abridgement of constitutional rights is asserted, the Courts should examine the effect of the challenged legislation. The substantiality of the reasons advanced in support of the regulation must be weighed against the free enjoyment of the rights asserted.

In *Lovell,* supra, the Supreme Court examined a municipal ordinance which prohibited distribution of "literature" in the widest sense. There were no restrictions in its application to time or place, nor did it limit activities which could be regarded as inconsistent with the maintenance of public order, the molestation of the inhabitants, or the misuse or littering of the streets. Such a broad and discretionary enactment was found to be invalid on its face.

Likewise, in the absence of harassment or bad faith, the Statute must be "flagrantly

and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it". *Younger v. Harris,* 401 U.S. at 53, 91 S.Ct. at 755.

█ The licensing authority herein appears to be guided by "narrow, objective and definite standards" as required by the Supreme Court of the United States. Enforcement of the Ordinance does not appear as being conducted in bad faith or for purposes of harassment. Neither does the Ordinance flagrantly and patently violate constitutional guarantees, either on its face or in its application to this particular plaintiff. For these reasons, the motion for preliminary injunction is overruled and the Ordinance is hereby declared constitutional as written and applied. A copy of Ordinance No. 69, Series 1977 is attached hereto and incorporated herein by reference as though fully set out.

## APPENDIX

### EXHIBIT A

### ORDINANCE NO 69 SERIES 1977

AN ORDINANCE DEFINING, REGULATING AND LICENSING ADULT ENTERTAINMENT ACTIVITIES; ESTABLISHING FEES FOR LICENSING; PROVIDING FOR ADMINISTRATION AND ENFORCEMENT; AND PROVIDING A PENALTY FOR NON–COMPLIANCE. (As Amended)

*SECTION 1. Findings, Declarations of Public Policy and Purpose.*

A. *Findings.* The Board of Aldermen of the City of Louisville find (i) that certain adult entertainment activities which are located near areas zoned for residential use, near schools and near public parks, malls and similar open spaces that cater to use by family groups and children, have an adverse effect on the uses of such nearby properties for such purposes aforesaid; (ii) that certain adult entertainment activities, because of the conditions of their operations, have

contributed to an increased incidence of crime and juvenile delinquency; (iii) that adult entertainment activities through outside displays tend to attract an undesirable quantity and quality of clientele that encourages neighboring residents and businesses to move elsewhere and militates against new residents and businesses coming into the area thereby adversely affecting property values and contributing to a general deterioration of the City's neighborhoods; (iv) that the City of Louisville and the United States Government have spent millions of dollars on urban renewal, community development and neighborhood enhancement projects over the past several years to eliminate blight and to prevent the further deterioration of the City's neighborhoods, and; (v) that the City of Louisville is presently engaged in an extensive neighborhood and economic development program to promote the return of residents and businesses to the City and to deter the further flight of residents and businesses from the City of Louisville.

B. *Declaration of Public Policy.* The Board of Aldermen of the City of Louisville hereby declares as a matter of public policy that the regulating of adult entertainment activities within the City limits is a public necessity and is required in the interest of the health, safety, welfare and the economic and aesthetic well-being of the people and is required (i) to protect property values; (ii) to prevent blight and the deterioration of the City's neighborhoods; (iii) to promote the return of residents and businesses to the City's neighborhoods; and (iv) to decrease the incidents of crime and juvenile delinquency.

C. *Purpose.* The purpose of this Ordinance is to effect the declaration of public policy set forth herein as it relates to the foregoing findings of the Board of Aldermen and more particularly:

1. To protect property values;

2. To prevent blight and the deterioration of the City's neighborhoods;

3. To promote a climate conducive to a return of residents and businesses to the City's neighborhoods;

4. To enhance the quality of life in the City's neighborhoods;

5. To preserve and stabilize the City's neighborhood;

6. To decrease the incidents of crime and juvenile delinquency.

It is not the purpose of this Ordinance to establish community standards on obscenity nor to allow the establishment of adult entertainment activities which are in violation of state laws on pornography.

*SECTION 2. Definitions.*

A. "Director" shall mean the Director of the Public Health and Safety Cabinet or his designee.

B. "Person" shall mean any individual, partnership, corporation or business entity.

C. "Owner" shall mean any individual, partnership, corporation or business entity who has legal title to real estate, with or without accompanying actual possession thereof, or shall have all or part of the beneficial ownership of any real estate and a right to present use and enjoyment thereof, including a mortgagee in possession.

D. "Operator" shall mean any individual, partnership, corporation or business entity who establishes and/or maintains a business as its owner or manager.

E. "Adult Entertainment Activities" shall mean one or more of the following activities:

1. *Adult Book Store.* An establishment having as a substantial or significant portion of its stock in trade for sale, rent or display, pictures, books, periodicals, magazines, appliances and similar material which are distinguished or characterized by their emphasis on matter depicting, describing or relating to sexual activities as hereinafter defined or an establishment with a segment or section devoted to the sale or display of such material.

2. *Adult Motion Picture Theatre.* An establishment with a capacity of fifty or more persons having as a substantial or significant portion of its use the presentation of material having as a dominant theme or characterized or distinguished by an emphasis on matter depicting, describing or relating to sexual activities, as hereinafter defined, for observation by persons therein.

3. *Adult Mini-Motion Picture Theatre.* An establishment with a capacity for less than fifty persons having as a substantial or significant portion of its use the presentation of materials having as a dominant theme or characterized or distinguished by an emphasis on matter depicting, describing or relating to sexual activities as hereinafter defined for observation by persons therein.

4. *Adult Stage Show Theatre.* An establishment used for presenting live performances of humans and/or animals having as a dominant theme or characterized or distinguished by an emphasis on matter depicting or relating to sexual activities, as hereinafter defined, for observation by persons therein.

5. *Cabaret.* An establishment which features as entertainers and/or waiters and/or bartenders, male or female impersonators and/or persons, either male or female, who expose to public view of the patrons of said establishment at any time the bare female breast below a point immediately above the top of the areola, human genitals, pubic region and/or buttocks and/or human or simulated male genitals in a discernible turgid state, even if completely and opaquely covered.

6. *Adult Amusement Arcade.* An establishment having as a substantial or significant portion of its business one or more of the following: customer-operator motion picture devices, peep shows and/or similar devices either coin, token or slug operated or in consideration of an entrance fee or the like or both; which display material distinguished or characterized by their emphasis on matter depicting or relating to sexual activities as hereinafter defined.

7. *Commercial Sexual Entertainment Center.* A commercial establishment which consistently excludes minors from areas open to adult patrons and which establishments or areas are advertised by the owners

or operators thereof, so as to convey the idea that there is being offered in such areas entertainment or items which are designed to appeal to adult sexual interests, whether or not such entertainment or items involve or depict sexual activities as herein defined.

F. For the purpose of this Section, "sexual activities" is defined as:

1. Depiction of human genitals in a state of sexual stimulation.

2. Acts of human masturbation, sexual intercourse or sodomy;

3. Holding or other erotic touching of human genitals, pubic region, buttocks or breasts.

*SECTION 3. Restrictions, Requirements and Conditions.*

A. An establishment engaging in adult entertainment activities, except as otherwise provided by laws which may be more restrictive may not have more than one outside flush to the wall, facia style sign, not to exceed in size ten feet in length (horizontal to the ground) and three feet in width (vertical to the ground) with no flashing lights and with no lettering, wording or pictorial or representational matter which are distinguished or characterized by their emphasis on matter depicting, describing or relating to sexual activities as herein defined.

B. An establishment engaging in adult entertainment activities may not display their stock in trade or activities in such manner as to be subject to public view from outside the establishment, including but not limited to view from public sidewalks, streets, arcades, hallways or passways.

C. An operator engaging in adult entertainment activities may not permit a person under 18 years of age to enter his establishment.

D. An operator engaging in adult entertainment activities shall, at all times, cause the entrance of his establishment to be so attended as to insure compliance with the requirements contained in Subsection C.

E. An Adult Amusement Arcade, except as otherwise provided by laws which may be more restrictive, shall meet the following requirements:

(1) Any wall or partition which is situated so as to create a room, enclosure or booth in which any amusement device is located shall be constructed of not less than one hour fire-resistive material.

(2) The width of the aisles in any room where an amusement device is located shall be more than forty-two inches.

(3) There shall be no fewer than two doorways of a width no less than thirty-six (36) inches which provide ingress or egress from any room in which an amusement device is located, provided however, that one (1) doorway shall be sufficient in the event the Fire Chief should so determine. Doorway or doorways shall be unlocked during business hours.

(4) Over every doorway which provides egress from any room in which an amusement device is located there shall be maintained an internally illuminated exit sign with letters at least five (5) inches in height.

(5) Each amusement device located in such establishment shall be situated so as to permit the person using the device to have a constantly unobstructed view of the doorway or doorways which provide ingress or egress from the establishment.

(6) A light level of no less than ten (10) foot candles at floor level shall be maintained in every portion of said establishment to which the public is admitted.

(7) The numbers of persons in any room or partitioned portion of a room where amusement devices are located shall not exceed one person per thirty (30) square feet. The maximum occupancy load permitted in any room or partitioned portion of a room in which amusement devices are located shall be conspicuously posted by the operator, and shall remain posted, at the entrance of said room.

(8) The number of amusement devices shall not exceed the maximum occupancy load permitted in any room or partitioned

portion of a room in which an amusement device is located. The maximum number of amusement devices permitted in any room or partitioned portion of a room shall be conspicuously posted by the operator, and shall remain posted, at the entrance of said room.

### SECTION 4. Licensing.

A. The operator of an establishment engaging in an adult entertainment activity shall be required to make application for a license with the Director within sixty (60) days of the effective date of this Ordinance. Such application shall be in writing, under oath, and shall be in the form prescribed by the Director and shall contain the following information together with such further information as the Director may require.

1. (a) The name and location of the establishment.

(b) The names and addresses of the applicants, owners of the establishment, and if a corporation, the names and addresses of the Directors and the names and addresses of shareholders owning capital stock therein, and if a partnership, the names and addresses of the partners.

(c) The names and addresses of the owners of the property on which the establishment is located.

(d) The name and addresses of any rental agent of the property on which the establishment is located.

(e) The nature of the activity or activities to be engaged in at such location.

2. All criminal convictions of the applicant, owners, directors, partners, shareholders or employees other than misdemeanor traffic violations. This information shall be at all times current. It shall be the responsibility of the operator to notify the Director of any changes in this information.

3. The name and address of any person the applicant wants mail notice to be given in case of violation or other matters affecting the license hereunder.

4. Such application shall include a photograph or drawing of any signs displayed or proposed to be displayed on the exterior of the establishment and a statement of the dimensions of such signs.

5. Such application shall include proof of registration with the Commissioners of the Sinking Fund.

6. Such application shall be accompanied by a Certificate of Occupancy issued by the Zoning Inspector of the City of Louisville certifying that the business is in compliance with applicable zoning laws or has nonconforming use rights.

7. Such application shall include a certificate from the Louisville Division of Fire that all applicable fire regulations have been met and, in the case of an adult amusement arcade, that all requirements of Section 3(E) of this Ordinance have been met.

B. The Director will cause the premises to be inspected after such application has been received and shall issue a license forthwith if all restrictions, requirements and conditions and all applicable requirements of law have been met; except, that no license will be issued if the applicant or any owner, director, partner, shareholder or employee has been convicted of any felony or of a misdemeanor charge involving moral turpitude within the last five (5) years.

Provided, however, the granting of a license does not certify compliance with all applicable laws nor does it estop the City from enforcement of all applicable laws.

If inspection reveals failure to comply with any restrictions, requirements or conditions the Director shall notify the applicant in writing of that fact, stating what failures have been discovered and allow a reasonable time to correct such defects and informing the applicant of the appeal procedure if the applicant does not agree with the Director's decision.

C. The Director may permit such variance or deviation from the regulations of this ordinance as will effectuate the purpose and intent of this Ordinance.

D. Sixty (60) days after the effective date of this Ordinance, no operator shall maintain, operate or conduct an establish-

ment engaging in adult entertainment activities unless such person has made an application for a license.

E. One hundred eighty (180) days after the effective date of this Ordinance, no operator shall maintain, operate or conduct an establishment engaging in adult entertainment activities without a license.

F. One hundred eighty (180) days after the effective date of this Ordinance, and upon receipt of notice, no owner shall permit adult entertainment activities to operate on his property without a license.

G. One hundred eighty (180) days after the effective date of this Ordinance and upon receipt of notice, no person shall work or permit himself to be employed at an adult entertainment activity which has not been licensed.

H. All licenses shall be for the fiscal year, July 1 to June 30th, or the remaining portion of such fiscal year. The annual license fee shall be two hundred fifty ($250.00) dollars.

I. Annual fees may be prorated at the rate of twenty five ($25.00) dollars per month for the remaining full month of the current fiscal year, but not to exceed two hundred fifty ($250.00) dollars. Application for renewal of a license shall be made on or before March 15th of each year and accompanied by the annual fee of two hundred fifty ($250.00) dollars. Such application shall also contain any changes in the information required by subsection A above which have occurred since the previous application.

J. A license may be transferred to a new owner or operator or to a new location by a license holder by giving written notice to the Director fourteen (14) days before the effective date of such transfer, and upon filing therewith the complete information required in subsection A above for the new owner or operator, and upon the finding by the Director that such new owner or operator or location is qualified under this Ordinance. The fee for a license transfer shall be $100.00.

K. The Director shall have the power to revoke said license for the failure to comply with the restrictions, requirements and conditions set forth in Section 3 herein and if a felony or crime of moral turpitude is committed on the premises or upon the conviction of any operator, director, partner, shareholder, employee or applicant of a felony or a misdemeanor involving moral turpitude. Ten (10) days written notice delivered in person or by certified mail shall be given to such interested persons listed on the application for a license apprising them of reasons for the revocation and informing them of the appeal procedure if they do not agree with the Director's decision. The findings and rulings of said hearing shall be a final determination of the issues raised on appeal.

*SECTION 5. Administration of Ordinance.*

The Director is empowered to enact whatever rules and regulations are necessary for the orderly and complete administration of this Ordinance.

*SECTION 6. Severability.*

If any provision of this Ordinance or the application thereof is held invalid, such invalidity shall not affect other provisions or applications of this Ordinance which can be given effect without the invalid provisions or application, and to this end, the provisions of this Ordinance are declared to be severable.

*SECTION 7. Penalties.*

Any person who violates any provision of this Ordinance shall be guilty of a misdemeanor and upon conviction shall be punished by a fine of not less than fifty ($50.00) dollars nor more than one hundred ($100.00) dollars or imprisonment not to exceed fifty (50) days, or both, for each offense. Each day of such violation shall constitute a separate offense. No additional notice other than notice for the original offense shall be required to convict a person for violations resulting from a continuation of such offense.

*SECTION 8. Effective Date.*

This Ordinance shall take effect upon its passage and approval.

_____ C.B.A._____P.B.A.

APPROVED: 7/15/77 _____MAYOR.