785 F.2d 306
 46 Fair Empl.Prac.Cas. 1222,
39 Empl. Prac. Dec. P 35,890
Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
John W. Witten, Appellant
v.
A.H. Smith and Company et al., Appellees.
 No. 84-2269.
 United States Court of Appeals, Fourth Circuit.
 Feb. 13, 1986.
 
 Before MURNAGHAN, CHAPMAN, and SNEEDEN, Circuit Judges.
 PER CURIAM.
 
 
 1
 John W. Witten appeals from a grant of summary judgment by Judge James R. Miller, Jr., of the United States District Court for the District of Maryland, ruling against Witten's Title VII[1] claim and related federal[2] and pendent state claims. Witten contends that A.H. Smith & Company, his former employer, discriminated against him as to wages and vacation eligibility on the basis of race. Claiming that he was fired, Witten has additionally alleged, pursuant to 42 U.S.C. Sec. 2000e-3(a), that the termination was in retaliation for filing a discrimination claim with the Prince George's County, Maryland, Human Rights Commission. In addition to asserting his individual claims, Witten has pressed a putative class action.
 
 
 2
 One point of appeal concerned the scope of pre-trial discovery which Witten was permitted to take. Witten sought access to employment records for all eighteen of A.H. Smith and Company's facilities, divisions and corporations, while the company opposed the request as irrelevant and unduly burdensome. Judge Miller resolved the disagreement in the employer's favor.
 
 
 3
 Witten had sought discovery into the employment practices of each of the Smith enterprise affiliates as well as the structure of the entire organization. At a conference required by Local Rule 34 of the United States District Court for the District of Maryland, it was agreed that Witten might discover the employment records of three facilities functioning under the Smith umbrella: the Brandywine facility, Davis Sand and Gravel, and one other facility directed by Dennis Critchley, the Brandywine supervisor. The parties were unable to agree on discovery beyond the three, and Witten moved to compel discovery into the remaining fifteen facilities.
 
 
 4
 Immediately after Judge Miller's refusal to require discovery on the broad range sought by Witten, Witten withdrew his class claim. A.H. Smith and Company moved, as to Witten's individual claim, for summary judgment and submitted depositions, affidavits and other materials in support of the motion. Witten contented himself with filing an opposing brief, submitting no affidavits or other supporting factual materials. Judge Miller granted summary judgment, finding that Witten had failed to make out a prima facie case of discrimination under Title VII either as to wages and paid vacation, or as to retaliatory firing.
 
 
 5
 In other circumstances, we might well support Witten's right to obtain discovery into all of his employer's facilities, since such discovery would not be especially burdensome, and might be expected to throw light on the question of whether discrimination or retaliation existed.[3] Judge Miller's denial of broad discovery here, however, was not an abuse of discretion because Witten failed to make even a passing attempt at examining records for three facilities which A.H. Smith & Company agreed might be discovered. Witten's unwillingness to make use of some discovery, because he could not at the outset have everything he wanted, vitiates his challenge on abuse of discretion grounds to Judge Miller's order.
 
 
 6
 Passing on to the issue of summary judgment, we agree with the district court that Witten has failed to make out a prima facie case of discrimination in wages and paid vacations, or of retaliatory termination.
 
 
 7
 A.H. Smith, Sr. ("Smith") has been in the construction business for almost sixty years. He owns and operates eighteen facilities (grouped into seven divisions and three corporations) in Maryland and Virginia, that produce sand, gravel, cement and tar for construction purposes. Smith participates in the operations of the facilities and sets broad policies on employment, compensation and benefits. According to Smith's uncontradicted deposition, however, day-to-day employment decisions are made by the supervisor of each facility. Also according to depositions filed in the case and not disputed different divisions have different fringe benefit policies some offer paid vacation but offer no health plan, others offer a health plan but no vacation, while still others offer neither fringe benefit.
 
 
 8
 In April of 1980, Witten applied for a job as a crane operator at the Smith Brandywine facility. The supervisor at Brandywine, Dennis Critchley, was unable to offer him a position at Brandywine, but suggested he apply at the nearby Davis Sand & Gravel, another Smith operation. At Davis, the supervisor, John Gessner, offered Witten a position. Thereafter, Witten was a Davis employee, receiving pay checks from that concern.
 
 
 9
 During the fourteen months of his employment, Witten was "loaned" to the Brandywine facility for approximately six months. He was supervised by Critchley at Brandywine, although he remained a Davis employee. In June of 1981, Witten requested a paid vacation. Critchley referred Witten to Gessner, Witten's supervisor at Davis. Gessner denied the request for paid vacation. Gessner indicated that another crane operator working at Brandywine, who, as it happened, was also black, did not receive a paid vacation and that the decision was based on general "company policy." Witten at first maintained that Gessner referred to the other crane operator's race; however, at a later deposition, he conceded that Gessner did not make any reference to race.
 
 
 10
 Smith and Davis officials explained the disparity in paid vacation benefits as a function of differing employment arrangements at each facility. Those hired by Brandywine received paid vacation, but no health benefits. Because Witten was an employee of Davis (a facility at which employees received health benefits, but no vacation) and the other black crane operator was an employee of Patuxent Sand Company (at which employees received no paid vacation benefits), neither received the vacation benefit given to the others who worked at Brandywine. The employer's position was that the decision was a function of which enterprise one worked for, not a function of the employee's race.[4]
 
 
 11
 Subsequently, in July of 1981, Witten and Critchley had an argument over Witten's work during the last 45 minutes of the work day. Critchley told Witten to show up early the next morning; Witten threatened that he could kill Critchley. The next morning, Witten telephoned to say he would not show up. Witten claims he assumed[5] that he was fired, and that the incident was orchestrated to retaliate against him for filing discrimination charges with the County Human Rights Commission. Smith claims that Witten resigned and that, in any event, if he was fired, the death threat was adequate cause, and the discrimination charge had no effect on the termination of Witten's employment.
 
 
 12
 Witten, on June 30, 1981, had filed charges of discrimination in employment policy with the Prince George's County Human Rights Commission. After some initial proceedings and an attempted, but nondispositive, arbitration, the complaint was forwarded to the federal Equal Employment Opportunity Commission. On August 28, 1982, the EEOC issued a right to sue notice.
 
 
 13
 Judge Miller's grant of the motion for summary judgment was based on the following grounds:
 
 
 14
 (1) Witten failed to make out a prima facie case of discrimination in terms of employment and vacation;
 
 
 15
 (2) Witten failed to make out a prima facie case of retaliatory dismissal because he failed to show that he had been replaced by a non-member of the protected class; and
 
 
 16
 (3) Because all federal claims were dismissed, pendent state law claims should be dismissed as well.
 
 A. The Denial of Motion to Compel Discovery
 
 17
 It is accepted law that a district court's discretion to limit or allow discovery is great, so that an appeals court will overturn a discovery order only on a showing of abuse of discretion that results in prejudice to a party. See Voegeli v. Lewis, 568 F.2d 89, 96 (8th Cir.1977); ISI Corp. v. United States, 503 F.2d 558, 559 (9th Cir.1974); Duke v. University of Texas at El Paso (UTEP), 729 F.2d 994, 996 (5th Cir.1984), cert. denied, --- U.S. ----, 105 S.Ct. 386 (1984); Familias Unidas v. Briscoe, 544 F.2d 182, 191 (5th Cir.1976).
 
 
 18
 (i) As to Class Action
 
 
 19
 Written claims that the denial of discovery made it impossible to pursue the suit as a representative of a class. However, Witten has focused on the wrong target, i.e., the final question of the proper scope of discovery when pursued, in the correct manner, instead of the initial inquiry as to whether procedural proprieties preliminarily to be observed in order to permit broad based discovery to proceed have been observed.
 
 
 20
 Here we have a case where the plaintiff, allowed by agreement with his opponent to take some of the requested discovery, did not bother to avail himself even of that opportunity. It is with the case in that posture that the exercise of discretion by the district judge is to be measured.
 
 
 21
 Of course, a finding by an appellate court of an abuse of discretion is especially fact-specific. Some discovery is necessary before class certification and trial in order to allow plaintiff to develop a record with which to move forward. East Texas Motor Freight System, Inc. v. Rodriguez, 431 U.S. 395, 405-06 (1977).[6] In view of the slight nature of the burden upon the defendant to comply, were it apparent that Witten's attorneys had made any realistic effort to develop a record within the bounds of the discovery allowed by agreement of the litigants and not curtailed in any way by Judge Miller, we might well have concluded that the denial of discovery into Smith's other facilities was unduly restrictive and hence an abuse of discretion.
 
 
 22
 However, as things developed, Smith agreed to allow Witten to examine records for three facilities, yet Witten's attorneys made no effort to do so. Smith provided lists of names of employees at the three facilities, but Witten's attorneys took no steps to contact anyone on the lists to try and corroborate Witten's testimony, or to develop additional evidence of discrimination, or to find new witnesses. In short, Witten's attorneys wanted to consume the entire apple without taking the first bite that was proffered. Prudent counsel would have made every effort to explore the opportunities made available, and upon finding evidence supporting Witten's charge or other avenues which could best be explored on a wider basis, would have gone back to the judge and sought permission to take further discovery. Witten's counsel did not do so and we cannot say that, in those circumstances, Judge Miller's denial of discovery into Smith's entire organization was an abuse of discretion.
 
 
 23
 (ii) Individual Claims
 
 
 24
 The district court's decision is also unassailable when viewed in light of Witten's individual claims. Witten was allowed discovery into three facilities, at two of which he worked, while another was under Critchley's supervision. He also deposed Smith and Smith's son, a senior manager, and other officials of Smith's organization. Certainly evidence of an employer's discriminatory policy as applied to an entire operation can be of great help in establishing an individual claim. See Equal Employment Opportunity Commission v. American National Bank, 652 F.2d 1176, 1189 (4th Cir.1981), reh'g denied, 680 F.2d 965 (1982) (statistics alone can make out a prima facie case of discrimination); Davis v. Califano, 613 F.2d 957, 962 (D.C.Cir.1979) ("[S]tatistical evidence may establish a prima facie case of employment discrimination in an individual case."). Such evidence of company-wide discrimination is one means of establishing a prima facie case, but it is by no means the only one. Careful investigation of the records of the three facilities made available, as well as interviews with other employees and thorough deposition work are the natural and more common starting points. We cannot say that the district court's narrowly tailored discovery order unduly hampered Witten's individual claims. The district court did not abuse its discretion.
 
 B. The Grant of Summary Judgment
 1. As to the Charge of Discrimination
 
 25
 An appellate court may review a summary judgment decision under the same standard as that employed by the district court in the first instance. "The standards guiding the review of a denial of summary judgment are identical to those guiding the original decision...." Smith v. University of North Carolina, 632 F.2d 316, 338 (4th Cir.1980). The Supreme Court has described the standard as follows:
 
 
 26
 Summary judgment should be entered only when the pleadings, depositions, affidavits, and admissions filed in the case 'show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' ...
 
 
 27
 Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467 (1962). A court is, of course, obligated to assess the record in a light most favorable to the party opposing the motion. See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Nevertheless, we hold that the district court correctly granted Smith's motion for summary judgment.
 
 
 28
 Judge Miller found that Witten failed to make out a prima facie case of discrimination, describing the relevant legal criteria as follows:
 
 
 29
 1. plaintiff is a member of protected class;
 
 
 30
 2. plaintiff and non-members of protected class worked in similar capacities; and
 
 
 31
 3. plaintiff was either (a) given a lower initial rate of pay than non-members of the class, (b) given lower pay increases than non-members, or (c) denied paid vacation leave given to similarly situated non-members.
 
 
 32
 The criteria for making out a prima facie case under Title VII have been elucidated over a long period. In McDonnell Douglas Corp. v. Green, 411 U.S. 972, 802 (1971), the Supreme Court classified the factors in a prima facie case:
 
 
 33
 1. plaintiff is a member of protected class;
 
 
 34
 2. plaintiff applied for and was qualified for a job for which employer was soliciting applicants;
 
 
 35
 3. Despite qualifications, plaintiff was rejected;
 
 
 36
 4. After the plaintiff's rejection, the post remained open and the employer continued to seek applicants with employee's qualifications.[7]
 
 
 37
 The Court has further noted that the criteria are flexible, and must be adapted to meet the type of discrimination alleged in each case. Furnco Construction Corp. v. Waters, 438 U.S. 567, 577 (1978). Thus, for instance, the Court has modified the principles to fit the circumstances of a discriminatory termination in Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981). The common thread underlying the tests in Burdine, Furnco and other Title VII cases is that plaintiff must show that he is a member of the protected class, and to offer some objective evidence that a non-member of the class with roughly similar qualifications was treated in a better fashion with regard to the terms of hiring, wages, benefits or termination. Judge Miller's criteria, supra, follow the McDonnell/Burdine structure and are suited to Witten's claim.
 
 
 38
 Witten obviously was able to show the first two elements, his status and the presence of non-members of his class working alongside him. As to disparate treatment, Witten was only able to show that the other crane operator, also black and also on loan from yet another Smith wholly-owned corporation, also had received no paid vacation.[8] When Witten questioned his denial of paid vacation he was told that it was company policy. Since other workers at Brandywine, including whites, received paid vacation after a year of work, it would seem, for summary judgment purposes, that he has made out a claim of disparate treatment.
 
 
 39
 Witten admits, however, that he was employed by Davis Sand and Gravel, not Brandywine. Indeed, the other black crane operator was employed by Patuxent. "Company policy" was explained by Gessner as that policy applying to Davis employees (health but no vacation), which is different from that of Brandywine (vacation, no health).[9] Those assertions went uncontested, and Witten was unable to offer any evidence of disparate treatment between himself and white workers at Davis. In fact, he was unable to offer any evidence at all as to disparate treatment in wages.[10]
 
 2. As to the Charge of Retaliation
 
 40
 As for the grant of summary judgment on Witten's claim of retaliatory discrimination, the argument runs that summary judgment was inappropriate since the issue of whether Witten was fired or resigned was a disputed fact. Indeed, the district court found that it was disputed. For the existence of a disputed fact to defeat a summary judgment motion, however, that fact must be material. Fed.R.Civ.Proc. 56(c) ("The judgment sought shall be rendered forthwith if ... there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."); see also Securities and Exchange Commission v. Research Automation Corp., 585 F.2d 31, 35 (2d Cir.1978). If Witten resigned, there was no retaliation; if he was fired, he might make out a prima facie case. But the existence of a disputed fact is not, itself, dispositive if Witten has failed to show the other elements of a prima facie case.
 
 
 41
 Witten claimed that he was discharged in retaliation for filing discrimination charges with the County Human Rights Commission. While Witten did not need to and did not in fact contend that he was discharged on a discriminatory basis, i.e., that he was discharged on the basis of race, Judge Miller, nevertheless, applied the discriminatory discharge criteria of Burdine in analyzing Witten's termination. See also Marks v. Prattco, Inc., 607 F.2d 1153, 1155 (5th Cir.1979). Judge Miller essentially missed the crux of Witten's retaliation claim. He concluded that, because Witten failed to show that he was replaced by a non-member of the protected class, he did not make out a prima facie case of retaliation.
 
 
 42
 The district court hence applied an incorrect legal standard. Retaliatory discrimination is prohibited under 42 U.S.C. Sec. 2000e-3(a):
 
 
 43
 It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or ... has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.
 
 
 44
 42 U.S.C. Sec. 2000e-3(a) (1981). Witten claims that he was constructively fired for filing a discrimination charge with the Prince George's County Human Rights Commission.
 
 
 45
 However, in the appeal of a summary judgment, the district court's reliance on an erroneous ground does not mandate reversal where the record demonstrates that, for another reason, the result reached was correct. See Sadlowski v. United Steelworkers of America, 645 F.2d 1114, 1120 (D.C.Cir.1981); Charbonnages de France v. Smith, 597 F.2d 406, 411 (4th Cir.1979) ("We are not bound on review to consider only those specific grounds upon which the district court based its grant of summary judgment, but could affirm if we perceived alternative grounds."); 10 Wright & Miller, Federal Practice and Procedure: Civil Sec. 2716 at 658 (1983).
 
 
 46
 Despite the erroneous legal standard employed by the district court, and despite the presence of a disputed fact, summary judgment is nonetheless appropriate. Witten must have shown (1) that he engaged in protected activity (in this case, that he opposed unlawful employment practices on the part of the employer), (2) that the employer took adverse employment action against him (that Smith terminated Witten), and (3) that there existed a causal connection between the protected activity and the termination (that is, Witten must show that Smith discharged him with a retaliatory motive). See Ross v. Communications Satellite Corp., 759 F.2d 355, 365 (4th Cir.1985); Smalley v. City of Eatonville, 640 F.2d 765, 769 (5th Cir.1981); Grant v. Bethlehem Steel Corp., 622 F.2d 43, 46 (2d Cir.1980).
 
 
 47
 Witten's downfall stems from the fact that he failed to show that Smith, i.e., Critchley or Gessner, was aware of the discrimination charge with the county at the time of the end of Witten's employment with Davis Sand and Gravel. Witten has not offered any substantial evidence of a causal connection between his protected activity and the termination. Witten's sole evidence supporting the claim that Critchley knew of the discrimination charge was Witten's expressed belief[11] that Critchley's demeanor changed in the days prior to the termination. Witten offered no evidence that the County Human Rights Commission had a policy of notification within a certain time, or actually notified Smith within a certain time, or that Smith received notification prior to the end of Witten's employment. By itself, Witten's conclusory claim that Critchley "must have known" because of his demeanor on the day the two argued is not sufficient to establish knowledge of the charge, and, with it, a retaliatory motive. In the deposition testimony, Critchley and other Smith officials denied knowledge of the charge at the time Witten and the company parted ways.[12]
 
 
 48
 Furthermore, the record without rebuttal demonstrates that Witten uttered a threat against Critchley's life.[13] Even if we were to assume that Witten was discharged by Smith, and to assume that the company had actual notice of Witten's charges, Title VII does not insulate an employee from being discharged when he has threatened the life of his supervisor.
 
 
 49
 Finally, we do not pass on the propriety of the dismissal of Witten's claims under 42 U.S.C. Secs. 1981 and 1985(3), or the dismissal of Witten's pendent state claims, since Witten has failed to raise any issue regarding them on appeal. See Andrews v. Louisville & Nashville R. Co., 406 U.S. 320, 325 (1972). The decision of the district court to dismiss Witten's claims on summary judgment is, therefore, affirmed.
 
 
 50
 Affirmed.
 
 
 
 [1]
 42 U.S.C. Sec. 2000e
 
 
 [2]
 42 U.S.C. Secs. 1981, 1985(3)
 
 
 [3]
 E.g., Duke v. University of Texas at El Paso (UTEP), 729 F.2d 994 (5th Cir.1984), cert. denied --- U.S. ----, 105 S.Ct. 386 (1984); Doninger v. Pacific Northwest Bell, Inc., 564 F.2d 1304 (9th Cir.1977). Contrast McClain v. Mack Trucks, Inc., 85 F.R.D. 53 (E.D.Pa.1979). National Organization for Women v. Sperry Rand 88 F.R.D. 272 (D.Conn.1980)
 
 
 [4]
 No evidence was presented to suggest that any nonminority employee of Davis received a paid vacation
 
 
 [5]
 Generally an assumption does not suffice as a substitute for proof. See Fed.R.Evid. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter."); Elizararas v. Bank of El Paso, 631 F.2d 366, 373-74 (5th Cir.1980)
 
 
 [6]
 It has been held, however, that, prior to class certification, discovery should be limited to issues of certification; only after the certification has been granted will wide-ranging discovery be countenanced. See, e.g., Burns v. Thiokol Chemical Corp., 483 F.2d 300, 305-06 (5th Cir.1973), reh'g denied, 485 F.2d 687 (1973); National Organization for Women v. Sperry Rand, 88 F.R.D. 272, 277-78 (D.C.Conn.1980); Karan v. Nabisco, Inc. 78 F.R.D. 388, 404 (W.D.Pa.1978)
 
 
 [7]
 If the plaintiff shows some evidence supporting all of the factors, the burden of production then shifts to the employer to provide a legitimate, non-discriminatory reason for the decision. The burden of establishing a prima facie case of retaliation is "not onerous." Ross v. Communications Satellite Corp., 759 F.2d 355 (4th Cir.1985), quoting Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). If the employer meets his burden of showing a legitimate explanation then the plaintiff must prove that the reason given was a pretext. At no time does the burden of proof leave the plaintiff. Burdine, 450 U.S. at 153
 
 
 [8]
 There was no attempt to show that other Davis crane operators received paid vacations
 
 
 [9]
 The other black crane operator at Brandywine was an employee of Patuxent. Patuxent offered no health or paid vacation benefits
 
 
 [10]
 It should be noted that Witten might have been able to meet his burden had he submitted more thorough documentation to supplement his argument against the motion for summary judgment. As it was, much of Smith's supervisors' deposition testimony went uncontradicted, and Witten's claims were based upon his conclusory beliefs as expressed at deposition, without other evidence
 
 
 [11]
 A "belief" is close kin of an "assumption," see note 5, supra, and does not suffice to substitute for actual knowledge or objective evidence
 
 
 [12]
 Our decision obviates the need to come to grips with the dispute over whether Witten resigned or was discharged by Smith; the dispute is simply immaterial to the ultimate decision
 
 
 [13]
 In his deposition, Witten described his own words to Critchley in the following manner: "What I said to him was that I was the type of person that would kill him if he would attack me in any manner." Later in the same deposition, Witten repeated "You [Critchley] do not attack me or speak to me the way that you are doing because I am the kind of man that could take your life." Critchley had questioned Witten sharply about whether he was working during the last 45 minutes of the work day